**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re | Case No. 24-80619-CLH |
| | Chapter 11 |
| TIFFANY SANDERS, | |
| Debtor. | |

**MEMORANDUM OPINION AND ORDER GRANTING**
**IN REM RELIEF FROM THE AUTOMATIC STAY**

On August 29, 2024, this matter came before the Court on the In Rem Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(4) filed by Carrington Mortgage Services, LLC ("Carrington"), as amended by the Amended Motion for Relief from Stay Pursuant to 11 U.S.C. § 364(d)(4) (the "Motion for Relief") [Doc. Nos. 24 and 45].[1]  Upon consideration of the evidence presented and the arguments of the parties, and for the reasons set forth below, the Motion for Relief is GRANTED.

### I.  Jurisdiction

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of Alabama on April 25, 1985.  Venue is proper pursuant to 28 U.S.C. § 1408.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### II. Background and Procedural History

On June 24, 2005, Tiffany Sanders (the "Debtor") executed and delivered a Note in favor of Auburn Bank in the original principal amount of $77,241.00.  The Note was secured by a Mortgage

---

[1] "Doc. No." refers to the docket number for a filing in the instant bankruptcy case, Case Number 24-80619.

on real property located in Chambers County, Alabama, with a physical address of 307 South 12th Street, Lanett, Alabama 36863 and more particularly described as follows:

> LOT NO. 8, IN BLOCK NO. 11, AS SHOWN BY PLAT PREPARED BY CLARENCE J. WHITE, JR., ENGINEER, RECORDED IN MAP BOOK 3, PAGES 10-17, IN THE OFFICE OF THE JUDGE OF PROBATE OF CHAMBERS COUNTY, ALABAMA. SAID PROPERTY BEING LOCATED IN LANETT, CHAMBERS COUNTY, ALABAMA.
>
> THIS BEING THE SAME PROPERTY CONVEYED TO DABBS VENTURES, LLC BY DEED FROM JOHNNY H. ALLEN AND WIFE, DENISE C. ALLEN WHICH IS RECORDED IN DOC #: 2004-3290, IN THE OFFICE OF THE JUDGE OF PROBATE OF CHAMBERS COUNTY, ALABAMA.

(the "Real Property"). The Note and Mortgage subsequently were assigned to Carrington pursuant to that certain Corporate Assignment of Mortgage dated April 12, 2018.

On March 20, 2023, the Debtor executed a Universal Security Agreement from Tiffany Sanders as Grantor to Tiffany Sanders Trust as Grantee recorded in the Office of the Judge of Probate of Chambers County, Alabama on March 20, 2023, at Book 2023, Page 1325 (the "Universal Security Agreement"). The Universal Security Agreement is voluminous, largely incomprehensible, and characteristic of documents advancing "sovereign citizen" theories.

The Debtor defaulted under the terms of the Note and Mortgage, and Carrington began the process of foreclosure on or about July 12, 2023. On September 19, 2023, the Debtor executed a Quitclaim Deed from Tiffany Sanders – as Trustee of Tiffany Sanders Trust – to Supreme Goddess, LLC regarding the Real Property (the "Quitclaim Deed"). The Quitclaim Deed was recorded in the Office of the Judge of Probate of Chambers County, Alabama on September 20, 2023, at Book 2023, Page 416. Like the Universal Security Agreement, the Quitclaim Deed appears to reflect "sovereign citizen" theories.

On September 21, 2023, the foreclosure sale was held, and Carrington was the highest bidder. On October 11, 2023, the Foreclosure Deed in favor of Carrington was recorded in the Office of the Judge of Probate Chambers County, Alabama, at Book 2023, Page 4451.

Carrington served the Debtor with a Ten-Day Notice to Vacate dated September 26, 2023. Upon the Debtor's failure to vacate the Real Property, Carrington filed a Complaint for Ejectment on October 18, 2023, in the Circuit Court of Chambers County, Alabama (the "Circuit Court") identified as Case Number CV-2023-900097 (the "Circuit Court Case"). On March 11, 2024, the Circuit Court entered an order granting Carrington's Motion for Summary Judgment (the "Order"). The Order directed the Debtor to vacate the Real Property within 20 days of the Order.

On March 21, 2024, the Debtor, on behalf of The Tiffany Sanders Estate, filed a Complaint against Carrington Mortgage Services, LLC, et al. and Aman Marwah, CFO, et al. in the United States District Court for the Middle District of Alabama, Middle Division, Civil Case Number 3:24-cv-00180-RAH-CWB (the "Federal Court Case").

On April 1, 2024, the Debtor amended her Complaint in the Federal Court Case to include, without limitation: Lisa Burdette, Elizabeth T. Abney, William Issca Whorton, Kent McPhail, Paul Story, Bank of America, N.A., CITI, Auburn Bank, Heather Davis, Claude McCoy, Jr., Alastir Borthwick, Mark Manson, David Hedges, Mississippi Valley Title Company, Jeff Nelson, Countrywide Homes Loans, and Mark B. Higdon. The Defendants in the Federal Court Case represent various mortgage companies, mortgage loan officers, notary publics, attorneys, and judges. Like the Universal Security Agreement and Quitclaim Deed, the Complaint and Amended Complaint sound in "sovereign citizen" theories.

Following the Debtor's failure to comply with the Order, on May 1, 2024, the Circuit Court entered a Writ of Restitution or Possession (the "Writ"). On May 20, 2024, the Sheriff of Chambers

County, Alabama performed an eviction of the Debtor from the Real Property. The Debtor refused to cooperate with the Sheriff performing the eviction. As a result, the Debtor was arrested and charged with obstructing government operations and resisting arrest. After the Debtor was removed, an agent of Carrington performed a lockout of the Real Property. However, without the consent of Carrington, the Debtor entered and re-established possession of the Real Property.

On May 24, 2024, the Debtor filed the instant Chapter 11 bankruptcy case. In her schedules, the Debtor claims she still is the owner of the Real Property, and she lists Carrington as an unsecured creditor. On July 16, 2024, the Bankruptcy Administrator filed a Motion to Dismiss (the "Motion to Dismiss") [Doc. 29]. In the Motion to Dismiss, the Bankruptcy Administrator highlights the Debtor's failure to abide by the terms of the Court's Operating Order entered on May 26, 2024 [Doc. 12] (the "Operating Order"). Without limitation, the Debtor has failed to: close pre-petition bank accounts and open "Debtor-in-Possession" bank accounts; provide proof of insurance on property serving as collateral for the Debtor's secured debts; file monthly operating reports; and provide copies of all bank statements for the time periods covered by the monthly operating reports. Moreover, the Bankruptcy Administrator noted the Debtor's failure to file a copy of her most recent tax return, as required by 11 U.S.C. § 521(f)(1).

On July 22, 2024, the Debtor failed to attend the meeting of creditors, as required by 11 U.S.C. § 343. The Bankruptcy Administrator rescheduled the meeting of creditors for August 26, 2024, and again the Debtor failed to appear.

The Motion for Relief originally was set for a telephonic hearing on July 18, 2024. At the hearing on July 18, 2024, counsel for Carrington stated its position that Carrington is the owner of the Real Property by virtue of the foreclosure sale. After permitting the Debtor to state her position, the Court continued the hearing on the Motion for Relief to August 15, 2024, and

encouraged the Debtor to retain counsel, given the complexities of bankruptcy law generally and Chapter 11 in particular. At the telephonic hearing on August 15, 2024, the Court inquired whether the Debtor intended to present evidence to defend the Motion for Relief, and she indicated her intent to do so. Accordingly, the Court set the Motion for Relief for an in-person evidentiary hearing on August 29, 2024.

At the hearing on August 29, 2024, the Debtor testified under oath that she executed the Universal Security Agreement and the Quitclaim Deed to "protect" the Real Property from Carrington. She also admitted that after being removed from the Real Property by the Sheriff, she utilized the services of a locksmith to attempt to re-enter the Real Property. She testified that while she was in the process of trying to force her way back into the Real Property, the keys to the new lock installed by Carrington's agents dropped out of a lockbox, facilitating her re-entry into the Real Property.

The Debtor also testified that she intended to use the bankruptcy process to prevent Carrington's enforcement of its rights with respect to the Real Property. She appears to have been under the misunderstanding that her bankruptcy filing permitted her unauthorized re-entry and repossession of the Real Property. The Debtor did not deny that she had failed to fulfill her duties as a debtor in a Chapter 11 case, and she testified that she now sought dismissal of her bankruptcy case to further pursue her claims in the Federal Court Case.

### III. Legal Analysis and Conclusions of Law

The Court construes "*pro se* filings liberally to afford review on any 'legally justifiable base.'" *Smith v. United States*, 420 Fed. Appx. 944, 945 (11th Cir. 2011) (quoting *Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997)). Because *pro se* litigants often "lack familiarity with bankruptcy law and procedure," the court "liberally construes *pro se* pleadings to permit

- 5 -

Case 24-80619   Doc 47   Filed 09/03/24   Entered 09/03/24 15:53:56   Desc Main
Document    Page 5 of 10

consideration of the relief sought within the applicable legal and procedural limitations." *In re Stenson*, Case No. 05-93978, 2005 WL 6488095, at *1 (Bankr. N.D. Ga. Nov. 17, 2005); *see also Isaac v. IMRG*, 224 Fed. Appx. 907, 909 (11th Cir. 2007) (citing *Faulk v. City of Orlando*, 731 F.2d 787, 789 (11th Cir. 1984)).

There are limits to this liberal construction, particularly when the Debtor has filed an affidavit stating that she: is not a "person"; has never received "income"; does not have "assets"; does not have a Social Security Number because she is not does not count herself among "US Citizens, 14th Amendment citizens, vessels and corporations"; and is not "an entity that is subject to any filing fees/taxes." *See* Doc. No. 5. In essence, the Debtor espouses "sovereign citizen" theories. Such theories are not worthy of serious consideration by this Court:

> Regardless of an individual's claimed status of descent, be it as a "sovereign citizen," a "secured party creditor," or a "flesh and blood human being," that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.

*U.S. v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011). "Courts have repeatedly rejected as frivolous arguments that people are 'sovereign citizens' who are not subject to the jurisdiction of any courts. *Walker v. Florida*, 688 Fed. App'x 864, 865 (11th Cir. 2017); *see also In re Wright*, 657 B.R. 26, 32 (Bankr. D.S.C. 2024) (granting relief from stay after rejecting "'sovereign citizen' theories that have been found to have no foundation in the law and have been consistently rejected by federal courts.").

The Debtor voluntarily filed a petition under the Bankruptcy Code. Accordingly, this case will be "governed by the Bankruptcy Code and not other parts of the United States Code that are inconsistent with it." *In re Wallace*, Case No. 24-00315, 2024 WL 3648551, at *5 (Bankr. N.D. Iowa Aug. 2, 2024).

Section 362(a) provides that the filing of a bankruptcy petition operates as a stay of, among other things:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . .

11 U.S.C. § 362(a).

Section 362(d)(1) provides that "on request of a party and after notice and a hearing," the court shall grant relief from the automatic stay imposed by Section 362(a) "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

Section 362(d)(4) provides that relief can be granted *in rem* under certain circumstances:

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).

Moreover, the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, and no provision of the Bankruptcy Code "providing for the raising of an issue by a party in interest shall be considered to preclude the court from, sua sponte, taking any action . . . necessary or appropriate to . . . prevent an abuse of process." 11 U.S.C. § 105(a). Accordingly, orders granting in rem relief from the automatic stay are appropriate under section 105(a) when entered to prevent abuse of process. *See In re Henderson*, 395 B.R. 893, 901 (Bankr. D.S.C. 2008); *In re McCray*, 342 B.R. 668, 670 (Bankr. D.D.C. 2006); *In re Rodriguez*, 516 B.R. 177, 179 n.2 (1st Cir. BAP 2014); *In re Robles*, Case No. 14-51812-ASW, 2014 WL 3715092, at *1 (Bankr. N.D. Cal. July 24, 2014); *In re Traub*, 2014 WL 1779261, at *4 (Bankr. S.D. Ga. May 5, 2014).

In this case, cause exists for in rem relief from stay under sections 362(d)(4) and 105(a). The facts established through Carrington's affidavit and the Debtor's testimony at the evidentiary hearing on the Motion for Relief support the conclusion that the Debtor filed her Chapter 11 case in furtherance of a scheme to delay, hinder, or defraud Carrington by, without limitation:

attempting to transfer or otherwise encumber the property through the Universal Security Agreement and Quitclaim Deed; refusing to vacate the Real Property; forcibly re-entering the Real Property without Carrington's consent; and attempting to re-litigate issues disposed of in the Circuit Court Case by suing Carrington, Carrington's counsel and multiple public officials in the Federal Court Case. Meanwhile, the Debtor has failed to abide by the Operating Order in this case. Moreover, she has failed to file her most recent tax return and has twice failed to appear at the meeting of creditors, as required under sections 521(f)(2) and 343, respectively. Because the evidence establishes the Debtor has attempted to use her bankruptcy case as a sword rather than a shield and has failed to meet the basic duties of a Chapter 11 debtor as set out in the Operating Order and the Bankruptcy Code, cause exists to grant in rem relief from stay. *See Shell Oil Co. v. Waldron,* 785 F.2d 936, 940 (11th Cir. 1986).

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the Debtor has engaged in a scheme to delay, hinder, or defraud Carrington. Accordingly, the Court GRANTS in rem relief as to the Real Property. If Carrington records this Order in compliance with applicable state laws governing notices of interests or liens in real property, this Order shall be binding in any other case under the Bankruptcy Code purporting to affect the Real Property filed not later than two years after the date of the entry of this Order, except a debtor in a subsequent case may move for relief from such Order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of this Order for indexing and recording. The filing of a bankruptcy case by any individual or entity involving the Real Property shall not invoke the

protection of the automatic stay for a period of two years from the entry of this Order, absent a further order of this Court.

Done this 3rd day of September, 2024.

Christopher L. Hawkins
United States Bankruptcy Judge

c:  Tiffany Sanders, *Pro se*
    Kent McPhail, Attorney for Carrington